# EXHIBIT B

Mailed | Harrison, Krysta | 9/22/2016 3:38 PM          **LANDMARK AMERICAN INSURANCE COMPANY**

Approved | Bennett, Kyle | 9/22/2016 3:15 PM

### *This Endorsement Changes The Policy. Please Read It Carefully*

This endorsement modifies insurance provided under the following:

**Miscellaneous Professional Liability Coverage Form Claims Made and Reported Basis**

#### EXTENDED REPORTING PERIOD ELECTION ENDORSEMENT

| **Premium charge for this endorsement:** ▮▮▮▮▮ . |
|---|

This Extended Reporting Period Election Endorsement is effective 08/26/2016 at 12:01 A.M

It is hereby understood and agreed that the Named Insured as listed on the Declarations Page has exercised the option as described in the **Insuring Agreement, Paragraph G. Extended Reporting Period** to purchase an extension of coverage that will expire 08/26/2018 at 12:01 A.M. Coverage is extended to include **Claims** which occurred subsequent to the retroactive date shown on the Declarations Page and prior to the end of the policy period, and which are otherwise covered by the policy, provided that the **Claim** is first made against the Insured on or after the effective date of this endorsement and prior to the expiration date of this endorsement

The Limit of Liability available under the Extended Reporting Period is part of and not in addition to the Limit of Liability stated in Item 2. of the Declarations Page

The deductible applicable to **Claims** made during the Extended Reporting Period shall be the same as the deductible amount applicable during the policy period.

This endorsement will not take effect unless the additional premium for it, as shown above, is paid within thirty (30) days after the effective date of the policy's termination. The premium for the Extended Reporting Period Election Endorsement is fully earned as of the effective date of this endorsement.

RSG 54066 0608

All other terms, conditions and warranties remaining unchanged.
This endorsement effective 08/26/2016
forms part of Policy Number LHR752875
issued to M J C LABOR SOLUTIONS, LLC          Endorsement No : 10
by Landmark American Insurance Company          Date Processed  : 09/13/2016

LAIC_000039



# *Professional Liability Insurance*

## CLAIM OFFICE:

**Mail claims to:**
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326-1160

**Fax claims to:**
(404) 231-3755
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com

RSG-51029 1114

LAIC_000040



**PROFESSIONAL LIABILITY POLICY DECLARATIONS**
**(Claims-Made and Reported Form)**

### Landmark American Insurance Company
(An Oklahoma Stock Co.)
(hereinafter called "the Company")

EXECUTIVE OFFICES:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

**Policy Number:**   LHR752875                     **RENEWAL OF:**   LHR746569 00

**Named Insured and Mailing Address:**                     **Producer Name:**

M J C LABOR SOLUTIONS, LLC
1720 S STATE ROAD, REAR LOT 201
UPPER DARBY, PA 19082               Approved | Hodes, Mary Sue | 8/19/2015 1:43 PM

**Policy Period:   From:**  8/26/2015   **To:**  8/26/2016    at 12:01 A.M. Standard Time at the Named Insured address as stated herein.

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE NAMED INSURED AS FOLLOWS:

1.  **NAMED INSURED'S**           SOLELY IN THE PERFORMANCE OF PROVIDING A PERMANENT AND/OR
    **PROFESSIONAL SERVICES:**    TEMPORARY EMPLOYEE PLACEMENT SERVICES AND/OR VISA
                                  APPLICATION PROCESSING SERVICES FOR OTHERS FOR A FEE

2.  **LIMITS OF LIABILITY:**           $ 1,000,000   Each Claim

                                       $ 1,000,000   Aggregate Limit

3.  **DEDUCTIBLE:**                     $ 2,500   Each Claim

4.  **RETROACTIVE DATE:**              08/26/2009

5.  **PREMIUM:**                       ███████████

6.  **FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**

    See attached forms list.

THESE DECLARATIONS TOGETHER WITH A SIGNED COPY OF THE NAME INSURED'S APPLICATION FOR THIS POLICY, COVERAGE FORM(S), FORMS AND ENDORSEMENTS, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

NOTICE: THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE AFFORDED BY THE POLICY WITH YOUR INSURANCE AGENT OR BROKER.

August 19, 2015                     By: _____
Date                                        Authorized Representative

SubIciD#.        313764        BinderD#
                               Created By   TC

RSG 50004 0714

**LANDMARK AMERICAN INSURANCE COMPANY**

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title |
|---|---|
| RSG 51025 0215 | Miscellaneous Professional Liability Coverage Form Claims Made and Reported Basis |
| ENDT-01 | Coverage Limitation Endorsement - RSG 56093 0405 |
| ENDT-02 | Employment Agency Executive Recruiters Additional Exclusions - RSG 56026 0209 |
| ENDT-03 | Minimum Retained Premium - RSG 54025 0405 |
| ENDT-04 | Nuclear Energy Liability Exclusion - RSG 56058 0903 |
| ENDT-05 | Pennsylvania - Notice of Cancellation & Nonrenewal - RSG 53015 0903 |
| ENDT-06 | Pennsylvania Surplus Lines Disclosure Notice - RSG 99091 0106 |
| ENDT-07 | Service Of Suit - RSG 94022 0407 |
| ENDT-08 | State Fraud Statement - RSG 99022 0415 |
| ENDT-09 | TCPA Exclusion - RSG 56121 1211 |

**Policy No.:** LHR752875

RSG 54081 0710

LAIC_000042

*This Form Provides Claims-Made Coverage.*
*Please Read The Entire Form Completely.*

# MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM – CLAIMS MADE AND REPORTED BASIS

Throughout this document, the word "Insured" means any person or entity qualified as such under **Part I. E. Covered Persons and Entities**. The word "Company" refers to the Company providing the insurance shown on the Declarations.

Other words and phrases that appear in **bold** have special meaning. Refer to **Part III. Definitions.**

### Part I. Insuring Agreement

#### A. Covered Services

The Company will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as **Damages** and associated **Claim Expenses** arising out of a negligent act, error or omission, **Advertising Liability** or **Personal Injury**, even if the **Claim** asserted is groundless, false or fraudulent, in the rendering of or failure to render professional services as described in the Declarations, provided that the:

1. **Claim** is first made against the Insured during the **Policy Period**, and reported to the Company no later than thirty (30) days after the end of the **Policy Period**;

2. Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place in a covered territory;

3. Negligent act, error or omission, **Advertising Liability** or **Personal Injury** took place after the **Retroactive Date** as shown in the Declarations.

#### B. Defense and Settlement

The Company will have the right and duty to defend any **Claim** against an Insured seeking **Damages** to which this policy applies, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Company's right and duty to defend any **Claim** shall end when the Company's Limit of Liability has been exhausted by payment of **Damages** and/or **Claim Expenses**, or has been tendered to the Insured or to a court of competent jurisdiction.

The Company shall not settle any **Claim** without the Insured's written consent. If, however, the Insured refuses to consent to any settlement recommended by the Company and elects to contest the **Claim**, or continue any legal proceedings in connection with such **Claim**, then the Company's maximum liability shall be limited to the amount for which the **Claim** could have settled, including the total amount of **Claims Expenses** incurred up to the date of the Insured's refusal. Such amounts are subject to the provisions of section **C. Policy Limits.**

The Insured shall not admit any liability for or settle any **Claim** or incur any costs, charges or expenses without the written consent of the Company.

#### C. Policy Limits

Regardless of the number of persons or entities insured or included in **Part I. E. Covered Persons and Entities**, or the number of claimants or **Claims** made against the Insured:

1. The maximum liability of the Company for **Damages** and **Claim Expenses** resulting from each **Claim** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as each **Claim**;

LAIC_000043

**2.** The maximum liability of the Company for all **Damages** and **Claim Expenses** as a result of all **Claims** first made against the Insured during the **Policy Period** and the Extended Reporting Period, if purchased, shall not exceed the amount shown in the Declarations as Aggregate.

The Company shall not be obligated to pay any **Claim** for **Damages** or defend any **Claim** after the applicable Limit of Liability has been exhausted by payment of judgments, settlements, **Claim Expenses** or any combination thereof. **Claim Expenses** are part of and not in addition to the applicable Limits of Liability. Payment of **Claim Expenses** by the Company reduces the applicable Limits of Liability.

The inclusion of more than one Insured, or the making of **Claims** by more than one person or organization, does not increase the Company's Limit of Liability. All **Claims** arising out of a single negligent act, error or omission, or a series of related negligent acts, errors or omissions by one or more Insureds shall be treated as a single **Claim** for all purposes of this policy. All **Claims** shall be deemed first made when the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period** and all such **Claims** shall be subject to the same Each Claim Limit of Liability during that **Policy Period**.

### D. Deductible Provisions

The deductible amount shown in the Declarations shall be paid by the Insured, applies to each **Claim** and includes **Damages** or **Claim Expenses,** whether or not a loss payment is made. If the deductible amount is initially paid by the Company, the Named Insured shall reimburse the amount paid within thirty (30) days, upon written request of the Company.

### E. Covered Persons and Entities

**1.** Named Insured as shown in the Declarations, and if the Named Insured is an individual, his or her spouse, or domestic partner, but only with respect to the professional services rendered by or on behalf of the Named Insured;

**2.** Any present or former principal, partner, officer, director, or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured;

**3.** Heirs, Executors, Administrators, and in the event of an Insured's death, incapacity or bankruptcy, legal representatives of any Insured, but only with respect to professional services rendered prior to such Insured's death, incapacity or bankruptcy.

### F. Covered Territory

This policy applies to covered **Claims** arising out of negligent act(s), error(s) or omission(s), **Advertising Liability** or **Personal Injury** committed by the Insured anywhere in the world, provided that either the **Claim** or suit is first filed and maintained continuously in the United States of America, its territories or possessions, Puerto Rico or Canada.

### G. Extended Reporting Period

If the policy is not renewed for any reason, or is cancelled for any reason other than for nonpayment of premium or deductible (whether cancelled by the Company or by the Named Insured), the Named Insured as shown in the Declarations, has the right to purchase, within thirty (30) days of policy termination, an extension of the coverage granted by this policy. This reporting period extension shall remain in force for a period of either twelve (12), twenty-four (24) or thirty-six (36) months after the policy terminates, but only for **Claims** resulting from negligent acts, errors or omissions, **Advertising Liability** or **Personal Injury** committed before the effective date of the cancellation or nonrenewal, and otherwise covered by this policy. Increased premiums or deductibles or modifications of coverage terms or conditions upon renewal do not constitute cancellation or nonrenewal.

The premium for this Extended Reporting Period will not exceed one hundred percent (100%) for twelve months, one hundred fifty percent (150%) for twenty-four months or one hundred seventy-five percent (175%) for thirty-six months of the full annual premium set forth in the Declarations and any attached endorsements, and must be elected and paid within thirty (30) days after the effective date of the policy's termination. Such additional premium is deemed fully earned immediately upon the inception of the Extended Reporting Period.

LAIC_000044

The Extended Reporting Period is added by endorsement and, once endorsed, cannot be cancelled. The Extended Reporting Period does not reinstate or increase the Limits of Liability. The Company's Limits of Liability during the Extended Reporting Period are part of, and not in addition to, the Company's Limits of Liability stated in the Declarations.

## Part II. Exclusions

This policy does not apply to any **Claim** or **Claim Expenses** based upon or arising out of:

A. Dishonest, fraudulent, criminal or intentional acts, errors or omissions committed by or at the direction of any Insured.

B. **Bodily Injury** or **Property Damage**.

C. Infringement of copyright, patent, trademark, trade name, trade dress, service mark, title or slogan.

D. Any business enterprise not named in the Declarations which is owned, controlled, operated or managed by any Insured.

E. A **Claim** by one Insured under this policy against another Insured under this policy.

F. Any violation of the Federal Securities Act of 1933 or Securities Exchange Act of 1934 or any other Federal or State securities law or any amendments thereof or additions thereto, or rules or regulations promulgated thereunder.

G. Any obligation or liability assumed by the Insured under any contract or any oral or written agreement, unless liability would have attached in the absence of such a contract or agreement.

H. Violation of any provisions of the Employee Retirement Income Security Act of 1974, or any amendment, regulation, ruling or order issued pursuant to that Act.

I. Breach of express or implied warranty or guarantee.

J. Or involving the ownership, maintenance, use (including operation, loading and unloading), or entrustment to others of any aircraft, automobile, motor vehicle, mobile vehicles or watercraft owned or operated by or rented or loaned to any insured. Use includes operation, loading and unloading.

K. An alleged act, error or omission, **Advertising Liability** or **Personal Injury,** or circumstance likely to give rise to a **Claim** that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior **Claim** or possible **Claim** referenced in the Insured's application.

L. False advertising or misrepresentation in advertising, but only regarding intentionally false, misleading, deceptive, fraudulent or misrepresenting statements in advertising the Insured's own product or service.

M. Unfair competition.

N. Liability of any person or entity, or any Company of such person or entity, under any worker's compensation, unemployment compensation, employer's liability, disability, or other similar law.

O. Regulatory authority or administrative actions brought by a federal, state or local governmental entity including, but not limited to: any actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental agency.

P. The insolvency or bankruptcy of an Insured or of any other person, firm or organization.

Q. 1. Refusal to employ;

2. Termination of employment;

3. Coercion, demotion, performance evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, retaliation or other employment related practices, procedures, policies, acts or omissions;

4. Consequential **Bodily Injury** or **Personal Injury** as a result of **Q. (1)** through **(3)** above.

LAIC_000045

This exclusion applies whether the Insured may be held liable as an employer or in any other capacity and to any obligation to share **Damages** with or to repay someone else who must pay **Damages** because of the injury.

It is further agreed that no coverage shall apply under this policy to any **Claim** brought by or against any spouse, child, parent, brother or sister of the Insured or any other person. The Company shall not have a duty to defend any **Claim**, suit, arbitration or any other form of trial court proceeding.

R.  1.  The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of **Pollutants** or asbestos;

2.  The failure to discover or disclose the existence or amount of **Pollutants** or asbestos;

3.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with **R. (1.)** or **(2.)** above;

4.  Any request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or, in any way respond to or assess the effects of **Pollutants** or asbestos;

5.  Any **Claim** or suit by or on behalf of a governmental authority for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or, in any way, responding to, or assessing the effect of **Pollutants** or asbestos.

## Part III. Definitions

A.  **Advertising Liability** means injury arising out of one or more of the following offenses:

1.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.  Oral or written publication of material that violates a person's right of privacy;

3.  Misappropriation of advertising ideas or style of doing business.

B.  **Bodily Injury** means physical or mental harm, sickness or disease sustained by a person, including death resulting from any of these at any time.

C.  **Claim** means a written demand for monetary or non-monetary relief received by the Insured during the **Policy Period**, including the service of suit, or the institution of an arbitration proceeding. Additionally, **Claims** that arise from an incident, occurrence or offense first reported by the Insured during the **Policy Period** and accepted by the Company in accordance with **Part IV. A. Notice of Claim** will be considered a **Claim** first made during the **Policy Period**.

D.  **Claim Expense** means expenses incurred by the Company or the Insured with the Company's consent in the investigation, adjustment, negotiation, arbitration, mediation and defense of covered **Claims**, whether paid by the Company or the Insured with the Company's consent, and include:

1.  Attorney fees;

2.  Costs taxed against the Insured in any **Claim** defended by the Company;

3.  Interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Liability;

4.  The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the available applicable policy limit, and only if said **Claims** are covered by the policy;

5.  Reasonable expenses incurred by the Insured at the Company's request other than:

a.  Loss of earnings;

b.  Salaries or other compensation paid to the Insured or any employee of the insured.

E.  **Damages** means monetary judgment, award or settlement, except those for which insurance is prohibited by law. **Damages** does not include punitive or exemplary damages, fines, penalties, sanctions, taxes, awards, or amounts that are multiples of any covered **Damages**, disputes over fees, deposits, commissions or charges for goods or services.

LAIC_000046

F. **Policy Period** means the period of time stated in the Declarations or any shorter period resulting from policy cancellation or amendment to the policy.

G. **Personal Injury** means injury, other than **Bodily Injury**, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

H. **Property Damage** means injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured.

I. **Retroactive Date** means the date stated in the Declarations on or after which any alleged or actual negligent act, error or omission, **Advertising Liability** or **Personal Injury** must have first taken place in order to be considered for coverage under this policy.

J. **Pollutants** means any solid, liquid, gaseous or thermal irritant, contaminant or toxin, whether live or inanimate, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, metals, silica, lead, lead compounds or materials containing lead, asbestos, asbestos compounds or materials containing asbestos, radon, waste or any like substances. Waste includes materials to be recycled, reconditioned or reclaimed.

## Part IV. Conditions

### A. Notice of Claim

The Insured must notify the Company as soon as practicable of an incident, occurrence or offense that may reasonably be expected to result in a **Claim**. Where notice to the Company of such incidents, occurrences or offenses has been acknowledged as adequate by the Company in writing, subsequent **Claims** derived from such incidents, occurrences or offenses will be deemed as first made at the time the incident, occurrence or offense giving rise to such **Claim** was first provided. The Insured also must immediately send copies to the Company of any demands, notices, summonses or legal papers received in connection with any **Claim**, and must authorize the Company to obtain records and other information. Please send all claim information to:

Attention: Claims Dept.
RSUI Group, Inc.
945 East Paces Ferry Road, Suite 1800
Atlanta, Georgia 30326-1160
Or Via Email:
reportclaims@rsui.com

### B. Prohibition of Voluntary Payments and Settlements

With respect to any **Claim** covered under this policy, the Insured will not make payment, admit liability, settle **Claims**, assume any obligation, agree to arbitration or any other means of resolution of any dispute, waive any rights or incur **Claim Expenses** without prior written Company approval, except at the Insured's own cost.

### C. Cooperation

The Insured will cooperate with the Company in the conduct of a Claim and, upon the Company's request, submit to examination and interrogation by the Company representative, under oath if required, and will attend hearings and trials and assist in affecting settlements, securing and giving evidence, and obtaining the attendance of witnesses.

LAIC_000047

#### D. Notice of Cancellation and Nonrenewal

The Named Insured may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

For other than nonpayment of premium or deductible, the Company will give the Named Insured sixty (60) days written notice prior to cancellation or nonrenewal of this policy by mailing or delivering the notice to the first Named Insured's last known mailing address. If the Company cancels the policy due to the Named Insured's failure to pay a premium when due, this policy may be cancelled by the Company giving not less than 10 days written notice of cancellation.

The cancellation notice will state the effective date of the cancellation and the policy will terminate on that date. If cancelled by the Company, the earned premium will be computed pro-rata. If cancelled by the Insured, the earned premium will be computed short rate.

#### E. Premium and Audit

Premium for this coverage is computed in accordance with the Company's rules and rates. Any premium shown as advance premium may be a deposit premium only. If the premium is a deposit premium, at the close of each audit period, the Company will compute the earned premium for that period. Audit premiums are due and payable upon notice.

The Company may examine and audit the Insured's books and records at any time during the **Policy Period** and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy.

The first Named Insured, as shown in the Declarations, must keep records of information the Company will need for premium computation and, upon request, must send the Company copies of the information.

#### F. Authorization

The first Named Insured listed in the Declarations agrees to act as the Named Insured with respect to giving and receiving of all notices, exercising the Extended Reporting Period option, canceling the policy, paying all premiums and deductibles and receiving any return premiums that may become due.

#### G. Change

This policy contains all of the agreements concerning the insurance provided. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with the Company's consent. The policy terms can be amended or waived only by endorsement issued by the Company, and made a part of this policy.

#### H. Subrogation

In the event of any **Claim** under this policy, the Company will be subrogated to all the Insureds' rights of recovery against any person or organization, and the Insured will execute and deliver instruments and papers, and do whatever else is necessary to secure such rights. The Insured will do nothing after the loss to prejudice such rights.

#### I. Other Insurance

This policy will be excess over, and will not contribute with, any other existing insurance, unless such other insurance is specifically written to be excess of this policy.

If it is determined that both this insurance and other insurance or self insurance apply to any **Claim** on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the **Damages** or **Claim Expenses** than the applicable Limit of Liability under the policy for such **Damages** bears to the total applicable Limit of Liability of all other insurance or self insurance, whether or not collectible against such **Claims**.

LAIC_000048

### J. Actions Against the Insurer

No action will be taken against the Company unless, as a condition precedent, the Insured is in full compliance with all of the terms of this policy and until the amount of the Insured's obligations to pay shall have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant and the Company.

### K. Non-Transferability

The Insured's rights and duties under this policy may not be transferred without the written consent of the Company.

### L. Coverage in Bankruptcy

Bankruptcy or insolvency of the Insured or of the Insured's estate does not relieve the Company of its obligations under this policy.

### M. False or Fraudulent Claims

If an Insured knowingly makes any **Claim** that is false or fraudulent, this insurance shall become void and entitlement to coverage for all **Claims** shall be forfeited.

### N. Application

The Insured agrees that the statements in the application are personal representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Insured and the Company, or any of its agents, relating to this insurance. The signed application, and any attachments thereto, submitted in connection with this Policy are incorporated herein and constitute a part of this Policy.

LAIC_000049

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, it is agreed that the insurance provided by this policy does not apply to any **Claim** or **Claim Expenses** for liability arising out of any operation of the Named Insured other than those operations as described on the Declarations Page.

It is further agreed that for any **Claim** made or suit brought which is excluded under the terms of this endorsement, the Company shall not have the obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment or attorney fees arising out of such **Claims**.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     8/26/2015
Forms part of Policy Number    LHR752875
Issued to    M J C LABOR SOLUTIONS, LLC
by    Landmark American Insurance Company

Endorsement No.:    01

RSG 56093 0405

**LAIC_000050**

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EMPLOYMENT AGENCY / EXECUTIVE RECRUITERS ADDITIONAL EXCLUSIONS

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In consideration of the premium charged, **Part II. Exclusions** is amended to include the following:

    **S.**    Failure to effect or maintain adequate levels or types of insurance.

    **T.**    Any purposeful, knowing or willful misrepresentation in regards to a prospective employee's background, qualifications, credentials, or in regard to the salary or compensation amount of a particular job or position.

All other terms and conditions of this policy remain unchanged.

This endorsement effective    8/26/2015
Forms part of Policy Number    LHR752875
Issued to    M J C LABOR SOLUTIONS, LLC
by    Landmark American Insurance Company

Endorsement No.:    02

RSG 56026 0209

LAIC_000051

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## MINIMUM RETAINED PREMIUM

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

In the event of cancellation of this policy by the Insured, return premium shall be computed at .90 of the pro rata unearned policy premium, subject however to a retention by the company of not less than $875.

Nothing in this endorsement is deemed to affect the Company's cancellation rights which remain as indicated in the coverage form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non payment of premium or deductible, subject however to retention by the company of the minimum retained premium as shown above.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     8/26/2015
Forms part of Policy Number    LHR752875
Issued to     M J C LABOR SOLUTIONS, LLC
by    Landmark American Insurance Company

Endorsement No.:     03

RSG 54025 0405

LAIC_000052

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

## NUCLEAR ENERGY LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

**This policy does not apply;**

a. **Under any Liability Coverage,** to bodily injury or property damage;

    (1) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Associates of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

b. **Under any Medical Payments Coverage** or any Supplemental Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

c. **Under any Liability Coverage** to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat;

d. **As used in this Endorsement:**

    (1) "Hazardous properties" include radioactive, toxic, or explosive properties;

    (2) "Nuclear material" means source material, special nuclear material or byproduct material;

    (3) "Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    (4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor,

This endorsement effective     8/26/2015
Forms part of Policy Number     LHR752875
Issued to     M J C LABOR SOLUTIONS, LLC
by     Landmark American Insurance Company

Endorsement No.:     04

LAIC_000053

(5) "Waste" means any waste material (a) containing byproduct material and (b) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (6), (a) or (b) thereof;

(6) "Nuclear facility" means:

    (a) any nuclear reactor;

    (b) any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing, or packaging waste;

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste; and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

LAIC_000054

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy. Please Read It Carefully.*

# PENNSYLVANIA – NOTICE OF CANCELLATION AND NON-RENEWAL AMENDMENT

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

**The Notice of Cancellation and non-renewal clause as contained in this policy is deleted and replaced as follows:**

The Named Insured may cancel this policy by mailing or delivering to the Company advance notice of cancellation.

The Company may cancel this policy by:

A.  CANCELLATION OF POLICIES IN EFFECT FOR SIXTY (60) DAYS OR LESS:

If this policy has been in effect for sixty (60) days or less, the Company may cancel this policy for any reason, by mailing thirty (30) days advance notice of cancellation to the Named Insured.

B.  CANCELLATION OF POLICIES IN EFFECT FOR MORE THAN SIXTY (60) DAYS:

If this policy has been in effect more than sixty (60) days or more, or is a renewal policy to Landmark American Insurance Company, the Company may cancel this policy only for one or more of the following reasons by mailing the following number of day advance notice to the Named Insured:

| REASON FOR CANCELLATION | NUMBER OF DAYS ADVANCE NOTICE TO BE PROVIDED NAMED INSURED |
|---|---|
| Non-payment of premium (failure to pay a premium when due) | Fifteen (15) days |
| If the Named Insured makes a material misrepresentation that effects the insurability of risk | Fifteen (15) days |
| A substantial change in the risk covered by this policy | Sixty (60 days |
| If the Company loses its reinsurance for this policy | Sixty (60) days |
| If the Named Insured does not comply with policy terms, conditions or duties | Sixty (60) days |
| Any other reason approved the by Insurance Commissioner | Sixty (60) days |

> **This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions, or concealment of facts material to the acceptance of the risk or to the hazard assumed by the Company**

C.  NOTICE OF NON-RENEWAL:

In the event that the Company decides to non-renew this policy, The Company will mail at least sixty (60)

This endorsement effective     8/26/2015
Forms part of Policy Number    LHR752875
Issued to     M J C LABOR SOLUTIONS, LLC
by    Landmark American Insurance Company

Endorsement No.:     05

LAIC_000055

days advance written notice of non-renewal to the Named Insured.

D.   NOTICE OF INCREASE IN PREMIUM – RENEWAL:

If the Company offers renewal terms with an increase in premium, the Company will provide the Named Insured with thirty (30) days advance notice.

The cancellation or non-renewal notice will be mailed via registered or first class mail to the Named Insured at the mailing address stated in the Declarations.  The cancellation or non-renewal notice will state the effective date of the cancellation as well as the reason(s) for cancellation or non-renewal and the policy will terminate on that date.

If coverage is cancelled by the Company, the earned premium shall be computed pro-rata.  If coverage is cancelled by the Insured, the earned premium shall be computed short rate.

All other terms and conditions of this policy remain unchanged.

LAIC_000056

**LANDMARK AMERICAN INSURANCE COMPANY**

## *IMPORTANT NOTICE*

### PENNSYLVANIA SURPLUS LINES DISCLOSURE NOTICE

**The insurer which has issued this Insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Insurance Guaranty Association.**

RSG 99091 0106

**LAIC_000057**

**LANDMARK AMERICAN INSURANCE COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SERVICE OF SUIT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of our failure to pay any amount claimed to be due, we, at your request, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court or seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States, moreover, this endorsement is not an agreement that the law of a particular jurisdiction applies to any dispute under the policy.

Service of process in such suit may be made upon the Senior Claims Officer of RSUI Group, Inc. 945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160, or his designee. In any suit instituted against any one of them upon this contract, we will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above named is authorized and directed to accept service of process on our behalf in any such suit and/or upon your request to give a written undertaking to you that we will enter a general appearance upon our behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, we hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successor or successors in office, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this contract of insurance, and we hereby designate the above named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of the policy remain unchanged

This endorsement effective      8/26/2015
Forms part of Policy Number    LHR752875
Issued to    M J C LABOR SOLUTIONS, LLC
by    Landmark American Insurance Company

Endorsement No.:      07

RSG 94022 0407

LAIC_000058

**LANDMARK AMERICAN INSURANCE COMPANY**

## State Fraud Statements
### Fraud Statements – Signature Required for New York Only

#### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

#### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

#### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

#### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

#### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

#### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

#### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

#### DISTRICT OF COLUMBIA FRAUD STATEMENT

WARNING: It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

#### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

RSG 99022 0415

A member of Alleghany Insurance Holdings LLC

**LAIC_000059**

## HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

## IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

## INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

## KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

## KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

## MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

## MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

## MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

## NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

## NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

## NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

A member of Alleghany Insurance Holdings I LC

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

## SIGNATURE REQUIRED

## NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____

Insured/Applicant/Claimant

_____

By (Authorized Representative)

_____

Title

_____

Date

RSG 99022 0415

A Member of Allegheny Insurance Holdings LLC

LANDMARK AMERICAN INSURANCE COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# TCPA EXCLUSION

This endorsement modifies insurance provided under the following:

**MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE FORM CLAIMS MADE AND REPORTED BASIS**

This insurance does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment of or addition to such law;

3. The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);

4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information; or

5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other electronic devices.

All other terms and conditions of this policy remain unchanged.

This endorsement effective     8/26/2015
Forms part of Policy Number    LHR752875
Issued to     M J C LABOR SOLUTIONS, LLC
by     Landmark American Insurance Company

Endorsement No.:     09

RSG 56121 1211

LAIC_000062

**RSUI Group, Inc.**
945 East Paces Ferry Road, Suite 1800
Atlanta, GA 30326-1160

**RENEWAL APPLICATION FOR MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE (CLAIMS-MADE FORM)**

**General Applicant Information**

1. Name of Applicant: _MJC Labor Solutions LLC_

2. Any changes in Address?   ☐ Yes  ☒ No (if yes, please complete the below)
   Principal Address: _1720 S. State Road - Rear Lot 201_

3. City: _Upper Darby_   County: _Delaware_   State: _PA_   Zip Code: _19082_
   Website: _www.lohnlabor.com_

**Applicant Practice**

4. Any change in the applicant's professional activities for which coverage is desired? (if yes, please describe below)   ☐ Yes  ☐ No
   ① We provide janitorial services for one large client and ② our company processes h2b work permits for temporary seasonal labor position for landscape companies, golf courses, cemeteries and other seasonal options. We also do Notary, recruiting, permanent services as well ③ we will entire process sign.

5. Has any one client (including affiliated clients) account for 25% or more of the Applicant's gross revenues during the past 12 months? If "yes", please provide the name(s) of the client(s) and percentage: _Chulano + Kubele_   ☒ Yes  ☐ No

6. List the total gross revenues for the past two years derived from those activities in Question 4. In addition, please list projected revenues for the current year (For Insurance Agents and Brokers, please provide both total gross commissions and premium volume)

   Year                              Amount
   a. Current Projected         $ _450,000.00 plus ? Not sure, what if 11 hit._
   b. Past Fiscal Year _2014_   $ _413,767.00_
   c. Second Past Fiscal Year _2013_  $ _342,481.00_

7. Please include a list of the Applicant's five (5) largest jobs or projects during the past three (3) years. (Do not complete for Insurance Agents and Brokers)

| Project / Client Name | Service Performed for Client | Revenue from those Services | Date Service Began | Former Employer of Applicant (Yes or No) | Pct. of gross revenue |
|---|---|---|---|---|---|
| Chulano / Kubele | Janitorial | 190,000.00 | 2006 | No | 45% |
| Delco Mulch | Small Engine | 91,000.00 | 2012 | No | 20% |
| Forever Green | H2B Visa | 50,000.00 pr yr | 2009 | no | |
| Llarenty & Clubs | " " | | | no | 10% |
| Mike Spade Landscape | " " | | | no | |
| Three Sisters Landscape | | | 2012 | no | |

RSG 50082 0115
State Road Builders #20

**Staff Information**

8.   Provide information on the Applicant's Staff:

|  | Full Time | Part Time |  |
|---|---|---|---|
| a. Total Number: | 7 | 0 | (including myself) |
| b. Number hired within the past 12 months | 3 | 0 |  |
| c. Number terminated, retired or resigned within the past 12 months: | 3 | 0 |  |

9.   Does any current member of the Applicant provide any professional services to any client in which any Applicant member or SPOUSE serves as a director, officer or partner or own any equity or financial interest, or is the Applicant owned by, Associated with or controlled by any other entity? (if "yes", please provide full details)   ☒ Yes ☐ No

10.   In the past twelve (12) months, has any professional liability claim or suit ever been made against the Applicant or any of its predecessor firms?   *But one was resigned in with drawls*   ☒ Yes ☐ No
If "Yes", how many _2_?   Please complete the Claim Supplement and provide currently valued company loss runs. *by plaintiff*

11.   Have all matters in Question 10, been reported to RSUI or to the Applicant's former or current insurer(s) or to the former insurer of any predecessor firm or former insurer of a current member of the Firm?   ☒ Yes ☐ No

12.   Has any principal, owner, partner or employee for whom coverage is sought been the subject of a disciplinary complaint made to any court, administrative agency or regulatory body? (if "yes", provide full details and documentation)   ☐ Yes ☒ No

**Representations**

The Applicant declares that the above statement and representations are true and correct, and that no facts have been suppressed or misstated.  All written statements and materials furnished to the Company, in conjunction with this application will be incorporated by reference into this application and made part hereof.

This application does not bind the Applicant to buy, or the Company to issue the insurance, but it is agreed that this form shall be the basis of the contract should a policy be issued, and it will be attached to and made part of the policy. The undersigned Applicant declares that if the information supplied on this application changes between the dates of the application and the time when the policy is issued, the Applicant will immediately notify the company of such changes, and the Company may withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance.

_____        _____        7/16/15
Signature of the Insured, Owner, Partner or Principal              Title                        Date

Yes, my wife, Mariana owns Three Seasons Landscape Contracting Services Inc. and my company is hired to obtain H2B work visas for the landscaping company

RSG 50082 0115

LAIC_000064

Your policy has been signed on our behalf by our President and by our Secretary and Treasurer. However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

LAIC_000065



RSG 51029 1114

A member of Alleghany Insurance Holdings LLC

LAIC_000066

Mailed | Harrison, Krysta | 9/22/2016 3:38 PM      **LANDMARK AMERICAN INSURANCE COMPANY**

Approved | Bennett, Kyle | 9/22/2016 3:15 PM

### This Endorsement Changes The Policy.  Please Read It Carefully

This endorsement modifies insurance provided under the following:

**Miscellaneous Professional Liability Coverage Form Claims Made and Reported Basis**

### EXTENDED REPORTING PERIOD ELECTION ENDORSEMENT

**Premium charge for this endorsement:** ▮▮▮▮.

This Extended Reporting Period Election Endorsement is effective 08/26/2016 at 12:01 A.M.

It is hereby understood and agreed that the Named Insured as listed on the Declarations Page has exercised the option as described in the **Insuring Agreement, Paragraph G. Extended Reporting Period** to purchase an extension of coverage that will expire 08/26/2018 at 12:01 A.M.  Coverage is extended to include **Claims** which occurred subsequent to the retroactive date shown on the Declarations Page and prior to the end of the policy period, and which are otherwise covered by the policy, provided that the **Claim** is first made against the Insured on or after the effective date of this endorsement and prior to the expiration date of this endorsement.

The Limit of Liability available under the Extended Reporting Period is part of and not in addition to the Limit of Liability stated in Item 2. of the Declarations Page.

The deductible applicable to **Claims** made during the Extended Reporting Period shall be the same as the deductible amount applicable during the policy period.

This endorsement will not take effect unless the additional premium for it, as shown above, is paid within thirty (30) days after the effective date of the policy's termination.  The premium for the Extended Reporting Period Election Endorsement is fully earned as of the effective date of this endorsement.

RSG 54066 0608

All other terms, conditions and warranties remaining unchanged.
This endorsement effective  08/26/2016
forms part of Policy Number  LHR752875
issued to  M J C LABOR SOLUTIONS, LLC                Endorsement No.: 10
by:  Landmark American Insurance Company         Date Processed   : 09/13/2016

**LAIC_000067**